Thomas, Adm'r, *v.* Negus *et al.*

William Thomas, administrator of the estate of Joseph Duncan, deceased, plaintiff in error, *v.* Isaac Negus *et al.*, defendants in error.

### *Error to Madison.*

A. rented to B. certain lots. Subsequently he mortgaged those lots to C. During the same month, D. conveyed the premises to A. and took a mortgage to secure the purchase money. C. and others commenced several suits to recover the amount of rents due them, whereupon B. filed a bill of interpleader against the plaintiffs, praying the Court to determine who was entitled to the rents, and offering to pay according to the order of the Court. The money was brought into Court, and an injunction was obtained, staying the proceedings at law. D. then filed a bill against A. and others to foreclose the mortgage made by A., claimed the rents in controversy, and insisted that his mortgage was a prior lien to the mortgage to C. The latter, in his answer, claimed the rents and insisted that his mortgage was the prior lien. This suit and the bill of interpleader were consolidated, and heard and determined as one case. A decree was made, directing the rents to be paid to C., and declaring the mortgage to D. the prior lien. C. received the rents directed to be paid to him. He afterwards died, and his administrator prosecuted a writ of error, assigning for error, the decree giving the priority to D. D. filed a plea, averring that, by C.'s acceptance of the rents, he acquiesced in the decree, and thereby released all errors; that his estate was insolvent and wholly unable to refund the same. Replication, demurrer and joinder: *Held,* that the plea was valid, and the receipt of the rents by C., under the circumstances of the case, necessarily operated as a release of errors.

Bill in Chancery in the Madison Circuit Court, filed by the defendants in error against Duncan and others at the May term 1843. The facts and various proceedings in the

cause are stated by the Court. The administrator of Dun-
can prosecuted a writ of error.

At the December term 1844, of this Court, the cause came
on to be heard upon a motion to dismiss the bill, which motion
was overruled. The defendants then filed a plea similar to
that interposed at the present term, to which there was a
demurrer, when the Court decided the plea to be good, and
ordered the writ of error to be dismissed. At a subsequent
day of the term, the plaintiff in error obtained leave of the
Court to withdraw the demurrer and file a replication at the
next term, which was done.

At the present term, the defendants moved that the case
be stricken from the docket, upon the ground that the decision
of the last term upon the plea was final, and the order di-
recting the writ to be dismissed had not been set aside or
vacated. The Court overruled the motion, stating that the
order granting leave to withdraw the demurrer to the plea
was equivalent to an order setting aside the order of dismissal.

A demurrer to the replication was then interposed and
argued by

*W. Martin,* for the defendants in error.

A party, having availed himself of the benefit conferred
upon him by a decree, cannot afterwards appeal therefrom.
*Atkinson* v. *Manks,* 1 Cowen, 709; *McElwain* v. *Willis,*
9 Wend. 553; *Slee* v. *Bloom,* 17 Johns. 484.

The plea alleges a release of errors, and this Court, at
the last term, held it to be good. The replication contains
four material averments, but even if they are admitted, they
do not settle the fact set up by the plea. It does not deny
the receipt of the money, under the decree, by Duncan, in
his life time. It does not set up any fact in reply to the plea
by way of denial, nor any new fact in defence. It is a
departure in pleading; we are not bound to answer it; it
puts in issue matters of *law* instead of *fact*; and the issue,
if joined, would be an immaterial issue.

*W. Thomas,* and *J. Butterfield,* for the plaintiffs in error.

The replication takes issue upon two points of the plea;

the receipt of the money under the decree, and the release of errors. 1 Greenl. Ev. 25, 33; *Clowes* v. *Dickinson,* 8 Cowen, 328; *Dyett* v. *Pendleton*, Ib. 325.

. In *Clowes* v. *Dickinson,* the law of this case is well settled.

The Opinion of the Court was delivered by

TREAT, J.* In August, 1836, William G. Pinckard executed to Marsh, Hankinson & Co., a lease of certain lots in Alton, for the term of five years, at an annual rent of $800. On the 5th of January, 1837, Pinckard executed a mortgage on the lots to Joseph Duncan, to secure the payment of $9,641·83. On the 25th of the same month, Negus & Robbins conveyed the lots to Pinckard, and at the same time took from him a mortgage thereon, to secure the payment of $4,143·75. In February, 1840, several suits were commenced by Duncan and other persons against the lessees, to recover the amount of rents due by them. The lessees thereupon filed a bill of interpleader against the plaintiffs in those actions, praying the Court to determine who was entitled to receive the rents, and offering to pay them according to the order of the Court. They brought the money into Court, and obtained an injunction staying the proceedings in the actions at law. In May, 1843, Negus & Robbins filed a bill against Duncan, Pinckard and others, for the purpose of foreclosing the mortgage made to them by Pinckard. By their bill, they claimed the rents in controversy, and insisted that their mortgage was a prior lien to the one made to Duncan. Duncan by his answer claimed the rents, and insisted that his mortgage was the prior lien. In July, 1843, this suit and the bill of interpleader were consolidated, and heard and determined as one case. A decree was entered, directing the rents to be paid to Duncan, and declaring the mortgage of Negus & Robbins to be the prior lien. It was further ordered, that if Duncan and Pinckard did not redeem within six months, the mortgaged premises should be sold, and the proceeds applied, in the first place, to the payment of the mortgage of Negus & Robbins; the surplus to be applied to

*LOCKWOOD, J. gave no opinion in this case.

the satisfaction of Duncan's mortgage. After the rendition of this decree, Duncan received the rents directed to be paid to him, amounting to $1,531·11.

Duncan has departed this life, and his administrator now prosecutes a writ of error. He assigns for error, that so much of the decree as gives to Negus & Robbins a priority in the payment of their mortgages is erroneous. To this assignment of error, Negus & Robbins filed their plea, averring, that Duncan acquiesced in the decree, and released all errors therein, by voluntarily accepting the rents; and that his estate is insolvent, and wholly unable to refund the same. There is a replication to this plea, a demurrer thereto, and a joinder in demurrer. The replication introduces no new matter into the case, which, in the opinion of the Court, changes the character of the defence presented by the plea. The question will, therefore, be considered as if on demurrer to the plea. In our opinion, the plea is valid. The receipt of the money by Duncan, under the circumstances of the case, necessarily operated as a release of errors. By accepting the rents under the decree, he acquiesced in and approved of it. A party ought not to receive the benefit of a decree, and then complain that it is erroneous. If dissatisfied with it, he should abstain from doing any act, which may change the situation, or impair the right of the parties, in the event of its reversal. If the decree is to be reversed, the parties ought to be restored to the position they occupied before it was rendered. Their rights should be reciprocal. Any other rule might be productive of great injustice. The present case furnishes a fit illustration. The pleadings admit the insolvency of the estate of Duncan, and its inability to refund the money. Suppose this writ of error should be retained, and the Court, on the hearing of the cause, should be of the opinion that the mortgage to Duncan was the prior lien, and that the rents belonged to Negus & Robbins, or some of the other parties. In such an event, the estate of Duncan would acquire an unjust advantage, and the other parties would be without an adequate remedy to enforce their acknowledged rights. This is not like the case of a judg-

ment or decree against a party. He may satisfy it, either voluntarily, or on compulsion, and then reverse it for error. In such case, he is required to do the act, or pay the money. Here, the party received the rents voluntarily, and he cannot protect himself by saying, he was required to accept them by the decree of the Court. The administrator might perhaps have avoided the effect of the plea, by bringing the money into this Court, subject to its disposition. If that course had been adopted, the rights of the parties could be preserved. We have been referred to the case of *Clowes* v. *Dickinson*, 8 Cowen, 328, decided in the Court of Errors of New York, which seems to lay down a different rule than the one we adopt in this case. We have maturely considered that case, and cannot concur in the opinion there expressed.

The demurrer will be sustained, and the writ of error dismissed.

The following dissenting opinion was delivered by

CATON, J. 'After the most mature reflection in connexion with the authorities adduced on the argument, my mind has been brought to the conclusion that the receipt by Duncan, of the money awarded to him by the decree, did not operate as a release of the errors which may have been committed against him in other parts of the decree. A decree in chancery is not necessarily an unit; but often, and indeed most generally, consists of several distinct, separate and independent parts, as is the case here. And any party complaining of any part of such decree, can bring it here and assign such part of the decree for error as he complains of, and then we can adjudicate only upon the errors assigned. When the error assigned goes to the whole foundation of the decree, as the want of proper parties, or want of jurisdiction of the parties and the like, then the whole decree must be reversed, and the cause remanded, that it may be placed in a proper condition to be heard. But where the error assigned only goes to a part of the decree which has been improperly adjudicated against the parties complaining, then we only have to do with such

Thomas, Adm'r, *v.* Negus *et al.*

part of the decree as is thus assigned for error, and we cannot put the plaintiff in error in any worse condition than he was before. The very averment of the defendant in his joinder in error is, that there is no error, and he prays that the decree may be affirmed. He neither asks, nor have we a right to give him any more than he has in the decree below. When the cause is properly brought to a hearing, and the decree consists of several facts, a part only of which is assigned for error, we cannot reverse the decree entirely, but only such part as is assigned for error, the others indeed not being before us. We have decided at this term, that a writ of error is an original suit in this Court, the cause of action in which is the supposed error in the decision of the Court below; and shall it be said that we can go beyond that supposed cause of action, and as it were, by way of set off, hunt up something in the decree, of which the defendant has never complained, and does not, by his pleading in the cause, complain, and give him something to which, possibly, he might have been entitled, had he prosecuted his right in proper time, and in a legal way? The defendant in error can put in no plea of set off, but his joinder in error is in the nature of a demurrer to the plaintiff's assignment, and the most he can possibly ask is, that the writ shall be dismissed, and the decree affirmed. I repeat, the most we can do for the defendant is to leave him as well off as we find him; and the least we can do for the plaintiff is to leave him in possession of all that is secured to him in the decree below. If, then, Duncan could not be deprived on this writ of error of the money adjudged to him below, then no one can complain that he has taken that which he has secured to him by that decree, and which we cannot take from him. By receiving that which the other party admits, by not complaining he was entitled to, he cannot be said to have released a right which he claims to have, but which the other party denies. Had Negus and Robbins thought that part of the decree, which determined that Duncan was entitled to the rents, unjust, they might have taken an appeal, or brought error, and assigned that part of the decree for error; then, and not till

then, could we take cognizance of that supposed error, and if erroneous, reverse that part of the decree. Without an appeal or a *supersedeas*, Duncan had an undoubted right to receive the money; and its receipt by him in no wise prevented the other parties from prosecuting a writ of error to reverse that part of the decree; and if reversed on such a proceeding, Negus and Robbins would have the same remedy against the administrator of Duncan that they would have had if he had not brought this writ. It may be said that the estate of Duncan is insolvent, so that the money cannot be recovered back from the estate; but that is a misfortune brought about by their own negligence in not taking steps in proper season to lay their complaints before this Court, and to prevent Duncan from collecting the money. Such consequences often follow such negligence. This plea is founded upon the mistaken notion, as I conceive, that the whole decree is before us for reversal or affirmance, as well that part which is not assigned for error, as that which is. If the decision of this case is to establish such a doctrine in this Court, I fear the length to which it will lead us, is hardly appreciated. It is a novel doctrine, as I apprehend, engrafted upon our system of chancery practice, which will require much pruning, to say the least. But I am not without authority to sustain the views which I entertain on this subject. In the case of *Close* v. *Dickenson*, 8 Cowen, 3, this question came before the Court of Errors of New York, in a case much stronger for the defendant in error than the present, where it was unanimously decided by that Court, that a party who had accepted and receipted for a sum of money which had been awarded to him in the decree, might still take the case to the Court of Errors, and claim that he was entitled to more than had been adjudged to him. In that case, the part of the decree complained of, was necessarily the very part under which he had received the money; depending on the same pleading and proof, all of which unavoidably came in review in the appellate Court, and yet the Court decided in substance, that notwithstanding the case might have shown that the plaintiff in error was entitled to less than he had

received, yet, the appellate Court could not diminish that amount in the proceeding then before it. In that case, Chancellor Jones and Senators Spencer and Colden all delivered opinions on the same side, and I may truly say that they are among the brightest ornaments that have ever adorned the legal profession in that State. I think the demurrer to the replication in this case should be carried back and sustained to the plea.

*Writ dismissed.*